1
2
3
4
5
6
7               IN THE UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9    SCOTT JAMES BARRETT,

10              Petitioner,                    No. CIV S-04-1608 GEB CMK P

11          vs.

12   MIKE KNOWLES, Warden,

13              Respondent.              <u>FINDINGS AND RECOMMENDATIONS</u>

14   _____/

15          Petitioner is a state prisoner proceeding pro se with an application for a writ of

16   habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his March 2002 conviction for

17   vehicular manslaughter while intoxicated, driving under the influence causing injury, and driving

18   with a blood alcohol level of 0.08 percent or more causing injury, plus enhancements for

19   personally inflicting great bodily injury and his sentence of eleven years.  He argues violations of

20   his Fourteenth Amendment due process rights and his Fourth Amendment rights.

21   I.     <u>Background</u>[1]

22          Petitioner worked night shifts at a grocery store in Vacaville.  After working a

23   night shift on January 24, 1997, and finishing work on the morning of January 25, 1997,

24   petitioner called his girlfriend, Lori Acosta, to tell her he was going out drinking with friends.

25   When petitioner arrived at Lori's house later that afternoon, he was loud, obnoxious and drunk.

26
_____
[1]For a more detailed factual summary see the June 3, 2003 opinion of the Court of
Appeal, which is attached to the answer as exhibit C.

He continued to drink until he went to bed around 7:00 p.m. that night.  Lori woke petitioner up three hours later, at approximately 10:00 p.m., because he had to be at work at the grocery store by 11:00 p.m.  She made him take a shower because he seemed out of it and not awake.  Petitioner left in Lori's red Jeep Cherokee.  It was raining hard and County Road 98, on which petitioner had to drive, was flooded.  Signs were posted along County Road 98 warning of the flooding.

Jose Serrano was also driving northbound on County Road 98 on the night of January 25, 1997.  Jose had eight people in his Cadillac: himself; his wife; his two young children; his brother, Raul, Raul's wife and her child; and Raul's young child.  Jose was approaching the flooded area of the road and was traveling between twenty-five and thirty miles per hour.  Suddenly, an oncoming car veered into Jose's lane.  Jose tried to avoid the collision, but the oncoming car was going to fast.  The car struck Jose's car in the northbound lane.  Jose was killed instantly.  The other passengers suffered varying degrees of injury.

Barry Wallace was driving northbound on County Road 98 around the time of the collision.  Barry had traveled the road earlier in the evening going south and had noticed water in the southbound lane.  Barry had stopped and driven through the water at about five miles per hour because he did not want to drive in the opposite (northbound) lane of traffic.

As he was driving on County Road 98 later that evening, Barry saw a black Cadillac in the northbound lane that had been in an accident.  The Cadillac was in the middle of the flooded area.  Barry also saw a red Jeep Cherokee wrapped around a telephone pole.

Barry called "911" and rushed to the Jeep.  Inside, he found petitioner, who was in the driver's seat.  Petitioner was yelling, his speech was slurred.  Petitioner was extracted from the Jeep by rescue personnel.  He was combative and smelled of alcohol.  Petitioner's blood was drawn at the hospital; his blood alcohol level was 0.13.  A criminologist testified that, if petitioner had his last drink at 7:00 p.m., his blood alcohol level at the time of the collision could have been as high as 0.17 percent.

1    A California Highway Patrol Officer, George Reese, was the primary accident
2    investigator.  When Reese arrived at the scene at 10:05 p.m, the rain was pouring.  Reese
3    ascertained from the damage to the vehicles and from his own experience that the total impact
4    speed was about 100 miles per hour, with one car traveling between 50 and 60 miles per hour
5    and one car traveling at about 40 miles per hour.  The collision appeared to have been head-on.
6    Reese concluded that the collision occurred in the northbound lane, because the Jeep, which was
7    traveling southbound,  had veered into the lane to avoid flooding in the southbound lane.

8    Reese concluded that, given the conditions and the posted flooding warnings,
9    petitioner had been driving at an unsafe speed.  Reese concluded that had petitioner been driving
10   at a safe speed, he could have stopped in time to avoid the accident.  Reese concluded that
11   petitioner was driving under the influence of alcohol and was driving on the wrong side of the
12   road.

13   The vehicles were not impounded by the Highway Patrol and had been destroyed
14   by the time of petitioner's trial.

15   The trial court admitted evidence of two prior incidents where petitioner was
16   arrested for driving under the influence of alcohol.  The evidence was admitted for the limited
17   purpose of establishing petitioner's state of mind at the time of the January 25, 1997 fatal
18   accident.  Petitioner was first convicted of driving under the influence on May 17, 1993.  The
19   court placed petitioner on three years probation and ordered him to enroll in a program for first-
20   time DUI offenders.  Petitioner successfully completed the DUI program.  The second arrest was
21   on December 22, 1996, a month before the 1997 fatal accident.  In the 1996 incident, petitioner
22   was driving a Ford Bronco, which crashed into a parked car, causing that parked car to crash into
23   another parked car.  A Woodland police officer found petitioner drunk at Lori's apartment.
24   Petitioner stated that he knew why the officer was there.  Petitioner's blood alcohol level was
25   0.23 percent and 0.24 percent.  Petitioner was taken to the police station, where he admitted that
26   he had an alcohol problem.  Petitioner was convicted of the December 1996 driving under the

3

1   influence offense in June 1997.

2          On June 27, 1997, approximately five months after the January 1997 accident,

3   criminal charges were filed against petitioner.[2]  Petitioner filed a motion to dismiss the charges

4   based on the delay between the date of the alleged crimes and the filing of the criminal

5   complaint.  The trial court agreed to defer a ruling until after the presentation of evidence at the

6   trial.  After jury trial began, the court denied the motion to dismiss.  A jury found petitioner

7   guilty of all charges against him and found most of the enhancement evidence to be true.  (CT

8   392-400; RT 1040-1043.)  After a bench trial, the trial court found true the allegations that

9   petitioner had been convicted of two prior DUI offenses for the purposes of counts 2 and 3, but

10   deferred a ruling on the truth of the prior convictions for purposes of count 1.  (CT 522; RT

11   1059.)  On January 14, 2002, the trial court found not true the prior conviction enhancement for

12   count 1.  (CT 603, RT 1071-1072.)  Petitioner was sentenced to eleven years in state prison.

13          Petitioner filed a notice of appeal.  The California Court of Appeal, Third

14   Appellate Division affirmed the judgment of the trial court.  Petitioner filed a petition for review

15   in the California Supreme Court, which denied the petition on August 20, 2003. (Answer, Ex. E.)

16   Petitioner filed the instant federal petition on August 9, 2004.

17   II.    Standards for Granting Habeas Relief

18          An application for a writ of habeas corpus by a person in custody under a

19   judgment of a state court can be granted only for violations of the Constitution or laws of the

20   United States. See 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any

21   claim decided on the merits in state court proceedings unless the state court's adjudication of the

22   claim:

23          (1) resulted in a decision that was contrary to, or involved an unreasonable
            application of, clearly established federal law, as determined by the Supreme Court

24          of the United States; or

25

26        [2]Petitioner was ultimately brought to trial on information that was filed on February 6,
1998.  (Clerk's Transcript (CT) 112.)

1    (2) resulted in a decision that was based on an unreasonable determination of the
2    facts in light of the evidence presented in the State court proceeding.

3  See 28 U.S.C. § 2254(d) (referenced herein in as " § 2254(d)" or "AEDPA"). See Ramirez v.

4  Castro, 365 F.3d 755, 773-75 (9th Cir.2004) (Ninth Circuit affirmed lower court's grant of habeas

5  relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his

6  Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v.

7  Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and

8  therefore did not address the merits of petitioner's Eighth Amendment claim).  Courts are not

9  required to address the merits of a particular claim, but may simply deny a habeas application on

10 the ground that relief is precluded by 28 U.S.C. § 2254(d). See Lockyer, 538 U.S. at 71

11 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir.2000) in which the Ninth

12 Circuit required district courts to review state court decisions for error before determining

13 whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not

14 precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

15        The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

16 different.  As the Supreme Court has explained:

17        A federal habeas court may issue the writ under the "contrary to" clause if the state
         court applies a rule different from the governing law set forth in our cases, or if it
18        decides a case differently than we have done on a set of materially
         indistinguishable facts. The court may grant relief under the "unreasonable
19        application" clause if the state court correctly identifies the governing legal
         principle from our decisions but unreasonably applies it to the facts of the
20        particular case. The focus of the latter inquiry is on whether the state court's
         application of clearly established federal law is objectively unreasonable, and we
21        stressed in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389
         (2000)  that an unreasonable application is different from an incorrect one.
22

23 Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law

24 set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to

25 cite or fails to indicate an awareness of federal law. See Early v. Packer, 537 U.S. 3, 8 (2002).

26        The court will look to the last reasoned state court decision in determining whether

                                                5

1 the law applied to a particular claim by the state courts was contrary to the law set forth in the

2 cases of the United States Supreme Court or whether an unreasonable application of such law has

3 occurred. See Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.2002), cert. dismissed, 538 U.S. 919

4 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a

5 claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must

6 perform an independent review of the record to ascertain whether the state court decision was

7 objectively unreasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003).  In other

8 words, the court assumes the state court applied the correct law, and analyzes whether the

9 decision of the state court was based on an objectively unreasonable application of that law.  It is

10 appropriate to look to lower federal court decisions to determine what law has been "clearly

11 established" by the Supreme Court and the reasonableness of a particular application of that law.

12 See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir.1999).

13 III.    Arguments and Analysis

14          A.    Due Process Violation

15          Petitioner claims that the five month delay between the January 1997 accident and

16 the filing of criminal charges against him violated his Fourteenth Amendment due process rights.

17 Specifically, he claims that the delay prevented him from gaining access to potentially

18 exculpatory evidence because the vehicles involved in the accident (the Jeep and the Cadillac)

19 had been destroyed by the time the charges were filed.  He alleges that the prosecution exhibited

20 bad faith in allowing the evidence to be destroyed and that the Court of Appeal unreasonably

21 applied applicable federal law in finding otherwise.

22          During his investigation of the accident, Officer Reese saw no reason to impound

23 the Jeep and/or the Cadillac because there was no claim of mechanical failure and the cause of the

24 accident–excessive speed, was obvious to him.  (RT 303, 587-589, 601.)  His decision was

25 consistent with the California Highway Patrol's general policy against impounding vehicles

26 involved in accidents, including fatal accidents.  As part of the investigation more than 150

1  photographs were taken, including photographs of the vehicles.  On May 26, 1998, petitioner's

2  attorney wrote to the District Attorney's office, requesting to inspect both vehicles.  (CT 146.) In

3  response, Deputy District Attorney Shirley Runnels stated that her office first became aware that

4  the vehicles had not been impounded in January 1998.  (CT 143.)  Investigators attempted to

5  locate the vehicles, but the Cadillac had been destroyed.  Id.   The Jeep had been located in a

6  salvage yard, but it was too late to halt it's destruction.  Id.  Photos had been taken of the Jeep,

7  and Runnels sent petitioner's attorney a copy of the investigation report and information on how

8  to get copies of the photos taken of the Jeep at the salvage yard.  Id.

9              1.  Delay In Filing The Complaint

10             The statutes of limitations are the primary guarantees against the filing of stale

11 charges.  See United States v. Lovasco, 431 U.S. 783 (1977).  The due process clause has a

12 limited role to play in protecting against oppressive delay in filing criminal charges against a

13 defendant.  See id. at 789.  To prosecute a defendant following a good faith investigative delay

14 does not deprive him of due process, even if his defense is somewhat prejudiced by the lapse of

15 time.  See id.  at 796.

16             The Ninth Circuit has set forth a two part test for determining whether delay in

17 charging a defendant constitutes a due process violation: (1) the defendant must prove actual,

18 non-speculative prejudice from the delay; and (2) the length of the delay, when balanced against

19 the reason for the delay, must offend those fundamental conceptions of justice which lie at the

20 base of our civil and political institutions.  See United States v. Huntley, 976 F.2d 1287, 1290

21 (9th Cir. 1992) (internal citations omitted).  To establish actual prejudice, a defendant "must

22 demonstrate by definite and non-speculative evidence how the loss of...evidence is prejudicial to

23 the defendant's case."  Id.  This is a heavy burden for a defendant and one that is rarely shown.

24 See United States v. Sherlock, 962 F.2d 1349, 1354 (9th Cir. 1992).   If a defendant fails to make

25 a showing that he suffered actual prejudice, the court need not consider the reasons for the delay.

26 See United States v. Manning, 56 F.3d 1188, 1194 (9th Cir. 1995).

1      In finding that petitioner had not shown that he suffered actual prejudice from the

2 delay in filing charges against him, the Court of Appeal reasoned:

3      A defendant's right to due process is violated by a prosecutor's
unreasonable delay in prosecuting the defendant if the delay would result in an
4      unfair trial....[W]hen the due process right is violated by an unreasonable delay in
prosecution, the defendant must show actual prejudice to obtain dismissal.
5      ....
      "Prejudice may be shown by loss of material witness due to lapse of time
6      or loss of evidence because of fading memory attributable to that delay.  If
defendant makes such a showing, the burden shifts to the prosecution to justify the
7      delay.  If defendant fails to show prejudice, the court need not inquire into the
justification for the delay since there is nothing to 'weigh' such justification
8      against."
      ....
9      The trial court determined defendant suffered no prejudice from the delay
in filing the complaint.  It reasoned "If I understand Mr. O'Sullivan correctly
10      [defendant's expert witness], one of the opinions he expressed today is that even if
the vehicles had been preserved, and even if the evidence had been collected at the
11      scene, one would not have been able to reconstruct the accident because in his
opinion the water the Jeep went through after the accident made it impossible to
12      calculate postimpact [sic] speed.  ¶ . . . ¶ . . . I simply can't see based on the unique
circumstances of this case that there is evidence that the loss of the vehicles and
13      the failure to make further measurements was – could have been helpful to the
Defendant's case."
14      Substantial evidence supports the trial court's determination.  Defendant
cannot genuinely claim he suffered prejudice when the evidence he sought to
15      obtain was determined by defendant's own expert to be irrelevant to defendant's
theory of the case.  Defendant sought to show he was traveling at a safe rate of
16      speed at the time of the accident. However, O'Sullivan testified even if the cars
had been preserved, their speed could not be calculated from additional inspection
17      and measurements of the cars because of the effect the water [sic] on the roadway
would have had on their speed.  Thus, there was no plausible explanation of what
18      defendant may have been able to prove had the vehicles been available.
      The prosecution's reconstruction expert, Christopher Port, made his
19      calculations based on measurements at the scene and numerous photographs of the
vehicles.  These measurements and photographs were provided to defendant.
20      Defendant thus had all the credible evidence available by which he could
determine the speed of the cars.  He was not prejudiced in not having the actual
21      vehicles themselves in this instance.
      Moreover, substantial evidence supports a conclusion the delay between
22      the accident and the filing of the first complaint was not unreasonable under these
circumstances.  The prosecutor required additional research before determining
23      what charges could successfully be brought against defendant.  He also waited for
defendant's other DUI case to be resolved, again for the purpose of determining
24      what charges and enhancements he could successfully prosecute against defendant.
      The delay wrought by these purposes was not unreasonable or for the
25      purpose of gaining some tactical advantage over the defendant.

26 (Ex C at 16- (internal citations omitted.)) After a careful review of the record, the court finds that

8

1  the Court of Appeal's conclusion that petitioner's due process rights were not violated by the

2  approximately five month delay is neither contrary to, nor an unreasonable application of,

3  applicable federal law.   Although petitioner argues in his traverse that the record "clearly and

4  unequivocally" demonstrates that he was prejudiced by the pre-complaint delay, the court is not

5  persuaded.  As noted by the Court of Appeal, petitioner's own expert acknowledged that, even if

6  the vehicles had been preserved (which may have been the case had the complaint been filed

7  earlier), their speeds at impact could not be determined because of the influence of the water on

8  the roadway.   Petitioner's conclusory allegations do not satisfy his burden of showing that he was

9  actually prejudiced by the delay in filing charges against him.  See Huntley, 976 F.2d at 1290.

10  Accordingly, the court finds no due process violation due to the delay in filing the complaint.

11                    2.    Destruction Of Vehicles and Bad Faith Claim

12              Petitioner argues that his right to due process was violated by the destruction of the

13  vehicles and that the prosecution and police acted in bad faith in destroying said vehicles.  The

14  loss or destruction of exculpatory evidence can violate a defendant's due process rights if the

15  evidence possesses exculpatory value that was apparent before it was destroyed, and is of such a

16  nature that defendant is unable to obtain comparable evidence by other reasonably available

17  means.  See California v. Trombetta, 467 U.S. 479, 488-89 (1984).  Moreover, a defendant must

18  establish "bad faith" on the part of the prosecution or police.  See Arizona v. Youngblood, 488

19  U.S. 51, 58 (1988).  Bad faith consists of "official animus towards [the accused] or a conscious

20  effort to suppress exculpatory evidence." Trombetta, 467 U.S. at 488.

21              Relying on California v. Trombetta, the Court of Appeal rejected this claim,

22  stating: "[s]ubstantial evidence...supports the trial court's determination defendant suffered no

23  due process violation due to the destruction of the vehicles.  The evidence demonstrates the

24  vehicles possessed no exculpatory value, defendant obtained comparable evidence, and the police

25  and prosecutor did not act in bad faith." (Ex. C at 23.)

26              After a careful review of the record, the court finds that the state court's rejection

1   of this claim does not reflect an objectively unreasonable application of the appropriate federal

2   principles.  Petitioner's own expert stated that the vehicles had no exculpatory evidence.

3   Petitioner's counsel was provided with the photographs of the vehicles, which had been used by

4   the prosecutions expert in reconstructing the accident.  (CT 174-76; RT 508, 609.)  Petitioner has

5   put forth no evidence to show that the police acted in bad faith; to the contrary, Reese, the

6   investigating officer, testified that his decision not to impound the cars was consistent with the

7   California Highway Patrol's general policies.  (RT 394, 587.)  Petitioner has made no showing

8   that either the prosecutor or the police acted with official animus towards him or made a

9   conscious effort to suppress exculpatory evidence.  See Trombetta, 467 U.S. at 488.  The court

10  finds that petitioner has not shown that his due process rights were violated by the destruction of

11  the two vehicles.  See Youngblood, 488 U.S. at 58;  Phillips v. Woodford, 267 F.3d 966, 986-97

12  (9th Cir. 2001).

13                    3.   Unreasonable Application Of Applicable Federal Law

14              Petitioner argues that the Court of Appeal's denial of his due process claims was

15  an unreasonable application of federal law.  In his traverse, petitioner cites to several California

16  State law cases, which do not support his contention that the state court misapplied federal law.

17  He then goes on to cite federal cases which explain an accused's right to a speedy trial, which is

18  different from the issue here—a due process violation caused by the delay in filing charges.

19  (Doc. 10: 36-38.)  In short, petitioner puts forth no authority to support his assertion that the state

20  court's rejection of his due process claim was an objectively unreasonable application of federal

21  law.

22              While noting that "unreasonable" is difficult to define, the Supreme Court has

23  made clear that an unreasonable application of federal law is different from an "erroneous" or

24  "incorrect" application of federal law. See Williams, 529 U.S. at 404.  A state court's decision can

25  involve an "unreasonable application" of federal law if it either 1) correctly identifies the

26  governing rule but then applies it to a new set of facts in a way that is objectively unreasonable,

1   or 2) extends or fails to extend a clearly established legal principle to a new context in a way that

2   is objectively unreasonable.  See id.   After careful review, the court finds that the Court of

3   Appeal's decision does not reflect an objectively unreasonable application of federal law.

4          The court recommends that petitioner's due process claim be denied.

5      B.   Fourth Amendment Violation

6          Petitioner argues that his Fourth Amendment rights were violated by the

7   prosecution's subpoena of records of his treatment in a local drunk driving rehabilitation

8   program, which were introduced at trial to show that petitioner knew of the dangers of driving

9   under the influence before the fatal crash.  Specifically, petitioner argues that the trial court erred

10  in admitting these records because they were obtained in violation of the Fourth Amendment.

11         "[W]here the State has provided an opportunity for full and fair litigation of a

12  Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the

13  ground that evidence obtained in an unconstitutional search and seizure was introduced at his

14  trial. Stone v. Powell, 428 U.S. 465, 494 (1976).  This is because the purpose of the exclusionary

15  rule is to deter unlawful police conduct and such a purpose would be minimally furthered by

16  applying the rule in habeas proceedings.  See id. at 493-94.  At the same time, granting habeas

17  relief based on search and seizure claims could generate disrespect for the criminal justice system

18  because application of the exclusionary rule "deflects the truth finding process and often frees the

19  guilty."  Id. at 490-91.

20         Here, petitioner was afforded a full and fair opportunity to litigate his Fourth

21  Amendment claims in the state courts.  After the prosecutor filed a motion in limine to introduce

22  evidence of petitioner's participation in the local DUI program, defense counsel filed an

23  opposition.  (CT 302, 314-315.)  Defense counsel argued that the program records were

24  privileged under California law and, pursuant to Penal Code section 1524(c), require a search

25  warrant before they can be seized.  Id.  The trial court initially ruled the evidence was not

26  admissible because the prosecution had not complied with these requirements. (CT 328; RT 30.)

11

1  However, the trial court later found that the release of petitioner's DUI program records was

2  controlled by a different regulation.  (RT 285-288.) The prosecutor filed a written application to

3  authorize disclosure and use of the records in compliance with the regulations.  (CT 360-362.)

4           Defense counsel objected.  (RT 626.)  The trial court overrule the objections,

5  finding that the prosecutor had complied with the regulations and could offer evidence based on

6  the records.  (RT 629.)  The record shows that petitioner had a full and fair opportunity to raise

7  this issue during trial and that he raised the issue on direct appeal and the Court of Appeal denied

8  his claim.  (Ex. B at 24-34.)  The court finds that because petitioner has had a full opportunity to

9  litigate his Fourth Amendment claims in state court, he is precluded from federal habeas relief

10 pursuant to Stone.  Accordingly, the court recommends that this claim be denied.

11 IV.    Conclusion

12          In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's

13 application for a writ of habeas corpus be denied.

14          These findings and recommendations are submitted to the United States District

15 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

16 days after being served with these findings and recommendations, petitioner may file written

17 objections with the court.  The document should be captioned "Objections to Magistrate Judge's

18 Findings and Recommendations."  Petitioner is advised that failure to file objections within the

19 specified time may waive the right to appeal the District Court's order. See  Martinez v. Ylst, 951

20 F.2d 1153 (9th Cir. 1991).

22 DATED:   December 22, 2006.

24                                              _____
                                                 CRAIG M. KELLISON
25                                               UNITED STATES MAGISTRATE JUDGE

12